Steven Troyen, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued January 30, 1978, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Andrew F. Erba,* for appellant.

*Reese F. Couch,* Assistant Attorney General, with him *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE MENCER, March 29, 1978:

This is an appeal by Steven Troyen (claimant) from an order of the Unemployment Compensation Board of Review (Board) which ruled him ineligible for unemployment compensation benefits. The Board's determination was based on Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e), which states in relevant part:

An employe shall be ineligible for compensation for any week—

. . . .

(e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work. . . .

In support of its order, the Board entered but five findings of fact:

1. The claimant was last employed by Philadelphia Newspapers, Inc., Philadelphia, Pa. for approximately 1 1/2 years as a district manager at $190.00 per week plus $50.00 per week automobile expenses and his last day of work was September 27, 1975.

2. Claimant, upon beginning his work day, is required to pick up his 'bundle mail' which contains customer's complaints as well as what duties claimant was to perform that day.

3. Claimant, prior to his last day of work, received warnings for failing to pick up his 'bundle mail' as required.

4. On September 26, 1975, claimant, upon beginning to work, failed to pick up his 'bundle mail'.

5. On September 27, 1975 claimant was discharged for failing to pick up his 'bundle mail'.

Claimant's challenge directs our attention to findings of fact 3 and 4 which he contends are unsupported by the requisite substantial evidence. In an unemployment compensation case, our scope of review is limited to a determination as to whether or not the Board's findings of fact are supported by substantial evidence and to questions of law, including the question of whether or not an employe's actions constitute willful misconduct. *Barnett v. Unemployment Compensation Board of Review*, 29 Pa. Commonwealth Ct. 581, 372 A.2d 48 (1977). Claimant also contends that, even if the record contains substantial evidence sup-

porting the challenged board findings, a conclusion of law of willful misconduct under Section 402(e) would not be warranted.

The Board backs its findings by inviting our consideration of the testimony of Mr. Burgess, who was claimant's supervisor. A portion of his testimony is as follows :[1]

Q [Referee] : Now you will have to explain these forms. You asked him for his 1020, what is a 1020?

[Employer Representative] : 1020 is a location. We work with short-wave radios and it's where are you located, where are you. And that's what I told him. I asked him [9/26/75] if he had checked his bundle mail which is the first thing you go to when you start your day and in that bundle, in that mail determines the course of action that you take for that day.

Q R : Where do they get that mail?

E R : The mail is left at one of his locations in his area and he should go there the first thing in the morning at 5 A.M. pick up his bundle mail, look it over, and then proceed to check all the drops in his area to determine whether the papers are there and to check (inaudible) he has a copy

---

[1] The critical testimony of the witness Burgess is peppered with "(inaudible)" indicators. Although we are able to glean from the testimony which was recorded, taken as a whole, sufficient evidence to make a remand unnecessary in the instant case, we cannot but deplore the record deficiencies which are so commonplace that they must have been apparent to the Board. We would urge the Board to take the necessary steps to correct this problem. Otherwise, proceedings will be meaningless and be the cause of delay, wasted time, and unnecessary expense and will likely compel our remand for a record that will meet due-process requirements.

of them in his bundle. Then approximately 6 o'clock, he starts to double back again, checking the drops by 6:30, quarter of 7, the papers he should be going in the drops. The boys should have picked them up, served them and if they haven't he was supposed to call the boys and make sure that all the papers are delivered. Then should there be complaints he has gotten, (inaudible) or anything else that was in that bundle mail and proceed to check it out. Example, he has a start he was instructed he should go see if the paper is on the step or if the boy served it having served the paper (inaudible) the customer and check out serious complaints, complaints that he has if people haven't gotten one in two days, go and make sure that they have one that day. His whole routine of things that he is supposed to do, and I had asked him if he checked his bundle mail that day and he said no, he didn't have time. Well that (inaudible) final day for me to feel he should be and I should talk to Mr. Potts and feel he should be discharged, because he had occurred numerous times.

Q R: Which incident being away from his area or not checking his bundle mail?

E R: Both.

Q R: Had he ever been warned?

E R: He had been warned verbally and (inaudible).

Q R: Do you have a record of (inaudible)?

Q: Are you asking about?

Q R: I am asking Mr. Burgess.

E R: Only what I mentioned when I talked to him and I told him and I asked him if he had checked his bundle mail.

Q R: (Inaudible)?

E R: On 9-22.

Q R: 9-22, what happened? Is that the report you wrote?

E R: Well yes, this is on this day.

Q R: On 9-22?

E R: Yes.

Q R: Will you read that report into the record please?

E R: Alright. (Inaudible) Fox Chase and Troyen's car was still there the same way it was on Friday when he broke down. He called in at 5:24 by radio. The next time he called in was 7:49 by telephone, the next time and last time was 10:24 by radio. When I questioned him on it, he didn't have an answer. When I asked him if he checked his bundle mail, he said he didn't have time.

The record clearly discloses that claimant did testify that he did pick up his "bundle mail" on September 26, 1975, and therefore there does exist a conflict in the testimony. The Board, of course, is the ultimate fact-finder and is empowered to resolve conflicts in the evidence and to determine the credibility of witnesses. *Unemployment Compensation Board of Review v. Wright,* 21 Pa. Commonwealth Ct. 637, 347 A.2d 328 (1975). We can find no reason to disturb the Board's findings here.

The term "willful misconduct" has been considered often by this Court. *See Unemployment Compensation Board of Review v. Glenn,* 23 Pa. Commonwealth Ct. 240, 350 A.2d 890 (1976); *Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board*

*of Review*, 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973). One of the rules which has been developed is that an employe's failure to follow the reasonable instructions of his employer constitutes willful misconduct. *Horn v. Unemployment Compensation Board of Review*, 26 Pa. Commonwealth Ct. 566, 364 A.2d 991 (1976).

Since the record in this case supports the Board's findings that claimant was required to pick up his "bundle mail" which contained customer's complaints as well as what duties claimant was to perform on a given day, that he had received warnings for failing to pick up his "bundle mail" as required, and that on September 26, 1975 he failed to do so, we can only conclude that claimant failed to follow the reasonable instructions of his employer. Accordingly, the Board properly concluded that he was ineligible for benefits.

ORDER

AND Now, this 29th day of March, 1978, the order of the Unemployment Compensation Board of Review denying benefits to Steven Troyen is hereby affirmed.